John GOUCHER, Appellant,

v.

PARMAC, INC., d/b/a Parkersburg Rig and Reel Company, a Delaware corporation, Appellee.

No. 60001.

Court of Appeals of Oklahoma, Division No. 4.

Oct. 9, 1984.

Rehearing Denied Nov. 13, 1984.

Certiorari Denied Jan. 23, 1985.

Released for Publication by Order of Court of Appeals Jan. 28, 1985.

Michael T. Rooney, Buck, Merritt & Hoyt, Oklahoma City, for appellant.

Scott M. Rhodes, Jerry Fraley, Legal Intern, Huckaby, Fleming, Frailey & Chaffin, Oklahoma City, for appellee.

DeMIER, Presiding Judge.

This is a manufacturers's products liability case involving a corporate successor. The trial court granted a summary judgment for one of the defendants. We affirm.

## FACTS

On December 30, 1979, Goucher, an oil field worker, was injured while working at a wellsite near Yukon, Oklahoma. He alleged his injuries were partly caused by a malfunction in the water brake which is used on an oil and gas rig to stop pipe from continuing downward into a well hole.

Goucher's action was brought against several co-defendants, one of which was Parmac, Inc., d/b/a Parkersburg Rig and Reel (Parmac), a Delaware corporation. The trial court found Parmac was not liable as a corporate successor and sustained its motion for summary judgment.

The evidence showed the water brake was manufactured in 1956 by Parkersburg Rig and Reel Company (Parkersburg), a division of Parkersburg-Aetna Corporation, in Parkersburg, West Virginia. In 1963, Parkersburg was purchased by Textron, Inc. In 1966, Textron sold the assets and properties of its Parkersburg Division to Parmac. At the time of the sale to Parmac, the manufacturing plant was located in Coffeyville, Kansas. Both the purchase agreement and indenture between Textron

and Parmac showed the latter did not assume any obligations or liabilities of Textron's Parkersburg Division.

## LAW

■ The sole issue to be decided in this appeal is whether Parmac has potential liability as a once-removed corporate successor of the manufacturer and seller of the alleged defective water brake.

The Supreme Court of Oklahoma stated the applicable general rule in *Pulis v. United States Electrical Tool Company,* 561 P.2d 68, 69 (Okla.1977), where it held:

"[W]here one company sells or otherwise transfers all its assets to another company, the latter is not liable for the debts and liabilities of the transferor. Exceptions to the rule are: (1) Where there is an agreement to assume such debts or liabilities (2) Where the circumstances surrounding the transaction warrant a finding that there was a consolidation or merger of the corporations, or (3) that the transaction was fraudulent in fact or (4) that the purchasing corporation was a mere continuation of the selling company." (Citations omitted.)

Even though the rule in *Pulis* was applied to an immediate successor corporation, we feel the rule is equally applicable to a once-removed corporate successor. The uncontroverted facts clearly indicate that none of the exceptions to the rule apply to Parmac.

Specifically, the affidavit of an assistant corporate officer of Textron provided sufficient support to show Parmac was not a mere continuation of Textron. The Textron officer stated as a result of the asset sale to Parmac, Textron's management and business did not materially change. In addition, Textron employs over forty thousand people worldwide and is a publicly-held corporation with over sixty thousand stockholders.

■ Goucher proposes the court adopt the so-called "product-line" exception formulated in *Ramirez v. Amsted Industries, Inc.,* 86 N.J. 332, 431 A.2d 811, 825 (1981). This exception states:

"where one corporation acquires all or substantially all the manufacturing assets of another corporation, even if exclusively for cash, and undertakes essentially the same manufacturing operation as the selling corporation, the purchasing corporation is strictly liable for injuries caused by defects in units of the same product line, even if previously manufactured and distributed by the selling corporation or its predecessor."

The "product line" exception is directly opposite to the test enunciated in *Pulis.* "The test is not the continuation of the business operation, but the continuation of the corporate entity." *Pulis,* 561 P.2d at 71.

The facts strongly indicate that Parmac and Textron were distinct corporate entities after the sale of Textron's Parkersburg Division. As a result, Parmac was not a mere continuation of Textron.

## CONCLUSION

There being no substantial controversy as to any material facts in the record, we affirm the order of the trial court granting summary judgment for Parmac.

BRIGHTMIRE and STUBBLEFIELD, JJ., concur.